UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANITRA MORRIS,

              Plaintiff,

         -v-

AHRCNYC,

              Defendant.

**MEMORANDUM AND ORDER**

18-CV-06885 (LDH) (RML)

L<small>A</small>S<small>HANN</small> D<small>E</small>A<small>RCY</small> H<small>ALL</small>, United States District Judge:

    Plaintiff Anitra Morris, proceeding pro se, asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 against Defendant NYSARC, Inc.,[1] doing business as AHRC New York City, for discriminatory termination on the basis of sex and retaliation. (Compl. at 3–5.) By order dated December 12, 2018, Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) was granted. (ECF No. 4.) Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.[2] (ECF No. 10.)

## BACKGROUND[3]

    Plaintiff was employed by Defendant. (Compl. at 3.) At an unspecified date, a manager named Steve approached Plaintiff to investigate an allegation that Plaintiff was supervising her

---

[1] In her complaint and case caption, Plaintiff incorrectly names Defendant as "AHRCNYC." (Compl. at 2.)

[2] On May 23, 2019, Defendant informed the Court that Plaintiff had not served it with a brief in opposition. (ECF No. 9.) By order dated May 24, 2019, the Court ordered Plaintiff to submit to the Court, in writing and by June 21, 2019, her opposition to Defendant's motion or a letter informing the Court that she did not intend to oppose it. The Court warned Plaintiff that failure to do so could result in the Court's deeming the motion unopposed or dismissing this action for failure to prosecute. To date, Plaintiff has not submitted any opposition papers.

[3] The following facts are taken from the complaint, allegations of which are assumed to be true for the purpose of this memorandum and order, as well as any materials incorporated therein and public documents of which the Court may take judicial notice.

son in violation of company policy. (*Id.*) Plaintiff was then asked to write a statement about their discussion. (*Id.* at 10.)

A week or two later, Plaintiff met with another manager, Kent Williams, and another individual named Melissa in "a small room with no windows." (*Id.* at 10–11.) Williams informed Plaintiff that they were conducting an investigation and demanded to look at Plaintiff's phone, telling her that failure to comply would be grounds for immediate termination. (*Id.* at 11–12.) Plaintiff gave Williams her phone and unlocked it at his direction. (*Id.* at 13.) Williams reviewed her call history, and used an office phone to call one of the numbers listed. (*Id.* at 13–14.) Williams asked Plaintiff whether she was in a romantic relationship with her manager and whether she had ever had sex with a coworker named David while at work. (*Id.* at 14.) Plaintiff denied the allegations. (*Id.* at 15.) Williams then asked for the names and ages of Plaintiff's children and the names of each of their fathers. (*Id.*) When Plaintiff inquired as to why questions about her children were relevant, Williams responded that his questions were related to the investigation and asked whether David had fathered her youngest child. (*Id.* at 15-16.) This line of questioning brought Plaintiff to tears, and she asked Williams and Melissa to leave her children out of their investigation. (*Id.* at 16.) Plaintiff was then asked to write a statement, which she did. (*Id.*)

A few weeks later, Plaintiff received a call from another investigator, who informed Plaintiff about a new allegation that she had a sexual relationship with a coworker named Dre. (*Id.* at 17.) Plaintiff denied the allegation and expressed her frustration about the investigation of her. (*Id.*) On December 11, 2017, Plaintiff received a letter of termination on the ground that she had allegedly violated Defendant's "relative policy." (*Id.*)

The following week, Plaintiff called Steve to arrange a meeting to discuss her concerns about the investigation and her termination. (*Id.* at 18.) Plaintiff met with Steve and an individual named Monica on January 17, 2018. (*Id.*) At that meeting, Plaintiff explained that the false allegations against her were defamatory and that Williams invaded her privacy by going through her phone. (*Id.*) She also expressed her impression that she had been singled out on the basis of sex, because she was not aware of any male colleagues whose phones were searched, and an unnamed former male colleague was not similarly reprimanded for having a sexual relationship with a subordinate. (*Id.* at 19–21.)

Although Plaintiff alleges that she filed a charge with the Equal Employment Opportunity Commission (the "EEOC") in November 2017, she does not attach such charge to her complaint, and the EEOC's right-to-sue letter indicates that her charge was filed less than 180 days before September 27, 2018. (*Compare* Compl. at 6 *with id.* at 8.) Defendant received notice of the charge on September 11, 2018. (Aff. Sharon Fong Ex. A, ECF No. 10-2.)[4] On September 27, 2018, the EEOC terminated its processing of the charge and informed Plaintiff of her right to sue under Title VII. (Compl. at 8.) This action timely followed.

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this

---

[4] "Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference." *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006).

standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, her pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Title VII Claims

Defendant argues that dismissal of Plaintiff's Title VII claims is warranted on the ground that Plaintiff failed to exhaust administrative remedies for both her discrimination and retaliation

4

claims or, in the alternative, that Plaintiff fails to plausibly allege either claim. (Def.'s Mem. Law Supp. Its Mot. Dismiss Pl.'s Compl. ("Def.'s Mem.") 9–19, ECF No. 10-5.) Because the Court agrees that Plaintiff has failed to demonstrate exhaustion of administrative remedies, it need not reach the merits of her claim.

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC . . . . within 300 days of the alleged discriminatory conduct and, before bringing suit, [the complainant] must receive a 'Notice of Right to Sue' letter from the EEOC." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). "Exhaustion is ordinarily 'an essential element' of a Title VII claim." *Id.* at 70 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001)). "Claims not raised in an EEOC complaint, however, may [also] be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Id.* "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation omitted).

Here, the latest alleged discriminatory conduct—Plaintiff's termination—occurred on December 11, 2017. (Compl. at 17.) Defendant received notice of Plaintiff's EEOC charge on September 11, 2018, less than 300 days later. (Aff. Sharon Fong Ex. A.) Thus, the EEOC charge was timely. However, Plaintiff has not identified the precise grounds on which she filed her EEOC charge, she has not annexed her charge to the complaint, and the notice of charge sent to Defendant does not identify sex-based discrimination or retaliation as bases for the charge. (*Id.*) Rather, under the heading "CIRCUMSTANCES OF ALLEGED DISCRIMINATION," the EEOC checked only the box marked "Other." (*Id.*) Thus, the Court cannot conclude that

5

Plaintiff exhausted administrative remedies with respect to her Title VII claims. This deficiency is potentially curable by attaching the EEOC charge to an amended complaint, which may indicate that Plaintiff brought a sex-based discrimination or retaliation claim against Defendant before the EEOC.

## II. Other Claims

Construing the complaint liberally, Plaintiff's allegations suggest additional claims for violation of her constitutional right to privacy and defamation. (*See* Compl. at 18.)

The private right of action for the violation of individual rights under the United States Constitution is codified at 42 U.S.C. § 1983. In order to maintain a § 1983 action, a plaintiff must show that the defendant acted under color of state law. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Purely private conduct, "no matter how discriminatory or wrongful," is generally beyond the reach of § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). A private person acts "under color of state law" when one of the following tests is satisfied:

> "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']."

*McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citation and internal quotation marks omitted); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

Here, Defendant is a private nonprofit organization, and Plaintiff does not allege any facts that would satisfy any of the tests described above. Thus, Defendant's private conduct may not be fairly attributable to the state for the purpose of a § 1983 claim.

Having dismissed all of Plaintiff's federal claims, and as the parties here are not diverse of citizenship, the Court declines to exercise supplemental jurisdiction over Plaintiff's other claims to the extent they arise under the state constitution or common law. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED, and the complaint is dismissed in its entirety.

In light of her pro se status, Plaintiff is granted leave to file an amended complaint within 30 days from the entry of this memorandum and order. *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000). The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this memorandum and order. Failure to file an amended complaint within 30 days, as directed by this memorandum and order, will result in dismissal of Plaintiff's case for failure to prosecute.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      November 22, 2019

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge